56 CCPA

### Application of Kurt HANDRICK.
### Patent Appeal No. 8133.

United States Court of Customs
and Patent Appeals.
June 5, 1969.

Michael S. Striker, New York City, attorney of record, for appellant. Fred Lederer, New York City, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 2–7 and 9–15 of application serial No. 286,892, filed June 6, 1963, entitled "Chloromethylation." No claim is allowed.

Appellant's invention relates to a process for the chloromethylation of aromatic compounds (i. e., the introduction onto such compounds of one or more $-CH_2Cl$ groups). The details of the

process are reflected by claim 2 which reads (emphasis ours):

2. A process for the chloromethylation of aromatic compounds, comprising the steps of reacting in a closed reaction vessel an aromatic hydrocarbon adapted to be chloromethylated at a temperature between about 50 and 100°C with concentrated aqueous hydrochloric acid and with formaldehyde *in the presence of an organic solvent which is inert* with respect to said aromatic compound, hydrogen chloride, formaldehyde and the chloromethylation product of said organic compound *and miscible with aqueous hydrochloric acid; and simultaneously introducing hydrogen chloride gas into said reaction vessel so as to maintain therein due to the introduction of said hydrogen chloride gas an absolute pressure of at least about 1.5 atmospheres.*[1]

The emphasized features (viz., the use of an inert solvent miscible with aqueous hydrochloric acid and the "simultaneous" introduction of hydrogen chloride gas) are stressed as bases of patentability; the remaining features are admitted to be old in the art.

Although appellant's specification and briefs before this court are somewhat contradictory on the point, it appears that the solvent in the claimed process must be miscible with the formaldehyde-hydrogen chloride aqueous phase and also be capable of dissolving at least a portion of the aromatic starting material and a portion of the reaction intermediates. The resulting aqueous and water-immiscible phases are intimately mixed during the process. One solvent disclosed as being useful in appellant's invention is *glacial*[2] *acetic acid.*

The combined use of the aqueous hydrogen chloride-miscible solvent and the maintenance of superatmospheric pressure during the process by introducing

hydrogen chloride gas are said to make possible the achievement of very high yield in relatively short periods of time. Also, the claimed process is said to give particularly good results in the preparation of aromatic compounds containing more than one chloromethyl group.

This appeal is from two prior art rejections (under 35 U.S.C. § 103) the better of which we think is that based on the following two United States patents:

Jones 2,212,099 Aug. 20, 1940
Adams et al. 2,951,100 Aug. 30, 1960

Jones, the primary reference, discloses the chloromethylation of aromatic compounds using formaldehyde and concentrated, aqueous hydrochloric acid in the presence of *glacial acetic acid* "as a vehicle, medium or homogenizer for the reagents." Use of pressures above atmospheric pressure is not disclosed.

Adams, which also relates to chloromethylating aromatic compounds with formaldehyde and hydrogen chloride, is principally relied on for its disclosure of the use of "a stoichiometric excess of CHl * * * under a pressure exceeding about 100 p. s. i. * * *." This reference also discloses that these conditions are particularly useful in the production of poly (halomethylated) compounds, i. e., compounds having added thereto more than one halomethyl group such as chloromethyl. The following excerpt from Example 1 of Adams indicates how the hydrogen chloride is introduced and the pressure is developed:

A 250 ml. "Hastelloy B" reaction vessel equipped with magnetic stirring means (Magne Dash) was charged with 15 grams (0.5 mole) of paraformaldehyde and was pressured to 350 p. s. i. with HCl at room temperature. After the resulting temperature surge had subsided, the reactor was depressured and 50 grams (0.37 mole) of

[1]. There has been some controversy as to whether the recitation "simultaneously introducing hydrogen chloride gas into said reaction vessel" should be interpreted as requiring the introduction of some hydrogen chloride gas as the reaction is proceeding. Read in the context of the entire claim, we are of the opinion that the quoted phrase must be so interpreted.

[2]. The common designation of acetic acid of at least 99.5% concentration.

durene was added. The reactor was then charged to a pressure of 300 p. s. i. with HCl at room temperature and was heated at 60°C. for one hour.

Explaining the rejection over Jones in view of Adams, the examiner stated:

Jones discloses a chloromethylation process in which the reaction is carried out in the presence of acetic acid as a solvent. The primary distinction of the instant process over that of Jones resides in the use of pressurized operation. However, the use of high pressures to provide an excess of HCl to produce poly (chloromethylated) products as taught by Adams et al. is deemed obvious. In regard to claims 9 and 10, the use of solvents equivalent to acetic acid for the same purpose is deemed obvious, particularly in view of appellant's arguments that any miscible liquid may be used.

The board essentially adopted this reasoning.

Appellant acknowledges that Jones discloses the usefulness of glacial acetic acid as a "vehicle, medium or homogenizer for the reagents," but appellant observes and appears to attach some unstated legal significance to the fact that Jones does not disclose what characteristics of glacial acetic acid make it useful or the principle on which this usefulness is based. As for claims 2–7 and 11–15, which encompass the use of glacial acetic acid, we consider it immaterial whether or not Jones realized or explained *why* glacial acetic acid was useful. What is material with respect to these claims is that in the process disclosed by Jones and the process claimed by appellant, an aromatic compound is chloromethylated by reacting it with formaldehyde and concentrated aqueous hydrochloric acid in the presence of glacial acetic acid and that appellant's process distinguishes from that of Jones only in the use of superatmospheric pressures developed and maintained by the introduction of hydrogen chloride gas into the reaction mixture. As for claims 9 and 10, which are limited to the use of dioxane and tetrahydrofurane, respectively, appellant has not pointed out any reason why one skilled in the art would not consider it obvious to substitute either of these well known solvents for the glacial acetic acid "vehicle, medium or homogenizer" of Jones.

Appellant also observes that Adams does not propose the use of an organic solvent in his process or *require* that an aqueous reaction medium be used. In this regard, however, we note that Adams does not indicate that either should not be used and also note that Adams *does* indicate that "Formaldehyde can be supplied to the reaction in *aqueous* solution * * *" (emphasis ours). We therefore cannot accept appellant's suggestion that one of ordinary skill in the art would not consider it obvious, in view of Adams' disclosure, to carry out the Jones process using superatmospheric pressures developed by the introduction of hydrogen chloride gas into the reaction vessel at the start of the reaction.

There remains the question of whether it would also have been obvious to introduce the hydrogen chloride during the reaction (as well as at the start of the reaction) in order to maintain the concentration of the hydrochloric acid in the reaction vessel. We are not persuaded that this feature renders the process as a whole unobvious because Jones discloses that improved yields are obtained by his process if two additions of hydrochloric acid to the reaction mixture are made, one at the beginning and one after the reaction has been going for some time, and also because appellant has acknowledged in his specification that prior to his invention it was known (at least with respect to chloromethylation processes conducted at atmospheric pressure) to "maintain the concentration of the aqueous hydrochloric acid" by passing a stream of hydrogen chloride gas through the reaction mixture.[3]

3. This is also the manner in which appellant prefers to introduce hydrogen chloride into the reaction vessel.

Appellant has submitted an affidavit which in part tends to demonstrate that the results that can be achieved by the claimed process are superior to those achieved by the Adams' process. This affidavit however contains no comparison of Jones' process (or any modification thereof) with that of appellant and therefore does not persuade us that appellant's invention as a whole would not have been obvious from Jones in view of Adams.

The decision of the board is affirmed.

Affirmed.